The next case on calendar for argument is the Bangan v. Powell, and hopefully we have on the phone attorneys, is it Yana? Mr. Rinaldo Yana? Yes. All right, and Mr. Schwab? Present, thank you. Great, thank you. We're ready to proceed, counsel. Good morning, Yana. This is Michael Schwab on behalf of the United States. I'm Rinaldo Yana, attorney for the Appellants. All right. Counsel for Appellants, please proceed. Mr. Yana? Yes. Would you please proceed with your argument? Oh, sure. Okay, thank you. May it please the Court, I am Rinaldo Yana, attorney for the Appellants. The Appellants' argument may be summarized as follows. The U.S. Congress made a covenant into Public Law 94-241. Section 501A of the covenant has made a citizenship clause of the 14th Amendment applicable within the Northern Mayonnaise beginning January 9, 1978 in accordance with Section 1003B of the covenant and the Presidential Proclamation No. 4434 by President Carter. The citizenship clause of the 14th Amendment states that all persons born or naturalized in the United States and subject to the jurisdiction thereof are citizens of the United States and other states wherein they reside. The Appellants Jacinto Sabatana and Esther A. Ginzón were born in the Northern Mayonnaise after January 9, 1978. And one of the issues in this case is whether the Northern Mayonnaise is in the United States for purposes of the application of the citizenship clause of the 14th Amendment. We answer yes, because Congress mandates that in applying the citizenship clause, the Northern Mayonnaise must be treated as if it were one of the several states which we contend comprise the United States. In the case of the United States v. Wong Kim Ark, which was decided in 1898, the U.S. Supreme Court presumed that Wong Kim Ark, who was born in California, was born in the United States. Apart from the obvious fact that being born in California means being born in the United States, the Supreme Court had in a prior occasion already defined the Constitutional term United States as being composed of the states which the premise of the Constitution termed as several states. I am referring to his decision in Texas v. White in 1869. Moreover, the legislative history of the 14th Amendment erases any doubt that when a person is born in one of the states that form the United States, he is born in the United States. That was what Justice Harlan pointed out in his dissenting opinion in Ark v. Wilkins, wherein he quoted one of the Senators who participated in a debate on the 14th Amendment. Senator Justice Swain also, in the Slaughterhouse cases, was of the same opinion that being a citizen of a state means being a citizen of the United States. If, therefore, we start and agree on the premise that being born in one of the states which form the United States is being born in the United States, then we should look at Section 501A of the Covenant, which mandates that in applying the Citizenship Clause within the Northern Mariana, it must be treated as if it were one of those states which form the United States. That's because Havana and Soho were born in the Northern Mariana after the effective date of the applicability of the Citizenship Clause in the Northern Mariana, and because the Northern Mariana must be treated as if it were one of those states which form the United States. The inevitable conclusion is that they were born in the United States and are therefore United States citizens by birth. They were conferred U.S. citizenship at birth not by Congress with Congressional power, but by the Citizenship Clause of the 14th Amendment to the U.S. Constitution. The fact that there seems to be no legislative record which shows that Congress intended to confer U.S. citizenship to their parents is really irrelevant, because it was not Congress that was supposed to grant U.S. citizenship to their parents. It was, as what we have already pointed out, the Citizenship Clause of the 14th Amendment that conferred U.S. citizenship to their parents. There are, in fact, two entities of powers who can grant U.S. citizenship. One of them is Congress, and the other one is the Citizenship Clause of the 14th Amendment. Congress did not grant citizenship to their parents. It was the Citizenship Clause which did it. Congress' role was merely to make the Citizenship Clause applicable within the Northern Mariana Islands, and there is no question that there is a legislative record which proves that Congress intended to make the Citizenship Clause applicable within the Northern Mariana Islands, even if we were to assume that the language in Section 501A of the covenant is ambiguous, which it is not. The Senate, which considered the covenant, had before it a copy of the section-by-section analysis of the covenant, which showed that the Citizenship Clause was one of the most constitutional provisions to be applied within the Northern Mariana Islands. While I still have time, I want to go back to that particular portion wherein the Section 501A of the covenant states that the Congress of the Latinas had to be treated as if it were one of those several states. The term several states is a term that was used by the framers of the U.S. Constitution to refer to the United States, the group of states that form the United States. Excuse me, I'm sorry to interrupt. Ms. Amanda? Yes. So, this is for a committee coordinator, and we have Judge Gould Chambers who has joined. Yes. Do you need Judge Gould to join this meeting? No, this is a wrong meeting. Okay, well, I'm sorry to bother you, but they sent us a fax and told us to call in. This is a wrong meeting, I'm sorry. That's Chairperson Kathy Kerrison. Thank you. May I proceed, Your Honor? Please. Sorry for the interruption. Yes. Well, the framers of the U.S. Constitution chose to refer to the states which comprise the United States with the use of the term several states, and that's the one that's in Section 501A. And I'd like to read just a portion of that section that says the word one of the several states. To the extent, Section 501A says in relevant parts, to the extent that they are not applicable by their own force, the following provisions of the Constitution of the United States will be applicable within the Northern Valley and Islands as if the Northern Valley and Islands were one of the several states. Now, we contend that several states is a group of states which form the United States. Therefore, it is to be one of the states, to be treated as if it were one of those states that form the United States, means that the CNMI is one of those states, and therefore, it is in the United States. Mr. Yonah? Yes? This is Judge Rawlinson. Okay. I have a question. Yes. The difficulty I have with your argument is that the Covenant has a specific provision that confers citizenship in a fairly specific manner. Why didn't that control over the general language that you're talking about incorporating the 14th Amendment? Are you referring to Section 303? Yes. Of the Covenant? Section 301. I mean, 303. Well, that's particularly important. That's right. And I know what the argument of the government is. It says there is a provision that gives citizenship to a person born after November 4, 1996. Why should that control the whole thing? Well, I think we're referring to two different provisions here. One is 303, and the other one is 501. I think that the one that should control is 501A because it is not only, it does not only protect the 301 U.S. citizens and the 303 U.S. citizens, but it also gives citizenship to those who did not receive U.S. citizenship in Section 303 and Section 301. But can argument be made that if everyone Congress intended to have citizenship was included in 303? I don't think so because that's really a problem with respect to when the termination of the citizenship was supposed to end. I think nobody knew at that time when the, after the Covenant, when it would become, when the termination of the citizenship agreement would end. So there was no way of knowing who was going to become a U.S. citizen among all those who were born within a month. So I think that making the citizenship law optimal there was sort of an assurance that everybody would be covered. Thank you. All right. Thank you, Counselor. You have seven minutes left. Would you like to save that for rebuttal? Yes. Thank you. We'll hear from the government now. Thank you. Thank you. Thank you. for persons in that jurisdiction so that they got due process of law and equal protection of the law under the government in transition. I just want to say, what does that language mean? And you've given several reasons why we want the 14th Amendment. But the 14th Amendment. Counsel. Please let me finish my question. The 14th Amendment explicitly says those born in the United States are citizens. How can you read that language out? Why do you read it out? Well, I don't read it out. You do read it out. They're born in the United States. And then the covenant says treat the Northern Marianas as one of the states. You deny that? No, it's to be treated as one of the states, Your Honor, in my interpretation, as a limitation on the government that existed at the time. But why do you limit the 14th Amendment, Section 1, when it says citizens are those born in the United States? The trust territory government could not violate their rights under due process of law. Well, yes, that's part of it. I think that's just a limitation on the state and their intrusion on them. It doesn't give that person the right to know they were born in the United States. But aren't you limiting the language? You're reading out certain parts of the language. I don't believe I am, Your Honor. Of course you are. It says all persons born are naturalized in the United States. It doesn't say that in a place that's being treated as a state for purposes of limiting that state's ability to impose on its citizens and violate their due process of equal protection. No, but the covenant says, Section 1 applies, as if the Iowans were one of the states. As if it were one of the states, not as if everyone in that jurisdiction were born in the United States. Well, I think you're going against the plain meaning of the text. Well, I believe there is a distinction between saying that it shall apply as though it applies against the state, but not saying that all the persons in that jurisdiction are now to be treated as persons who are born in the United States. Counsel, how many people, if you know, are affected by this issue? Well, to my knowledge, it's the 28 people that Mr. Ghana has mentioned in his brief. I do find it curious that it would apply to a pool even that large, because the circumstances of allowing in persons under Section 3 should incorporate almost, I can't imagine people who wouldn't incorporate unless she was born in the CMI and immediately left, because you would get trust territory citizenship by being born in the CMI during that transition period. And, of course, like in the case of the Philippines, you would also be a Filipino. Excuse me. But that was my question. Why is the government taking this fairly hard stance? Because I think we're suspicious of people that want to get in under something that, A, didn't exist in our opinion, and, B, there was another avenue for persons to get in legitimately if, in fact, they are legitimate. And that, of course, was the Section 3 that provided for persons who were trust territory citizens to become U.S. citizens. Does that answer your question? Yes, it does. So basically you're suspicious of the motives of the plaintiffs? I'm sorry, Your Honor. You're suspicious of the motives of the plaintiffs? Well, first of all, the circumstances legally are incorrect. And then, secondly, it doesn't set well that you would try to use a new poll exception that we don't think exists when, in fact, there's a provision right under Section 3 for persons who want to qualify to be U.S. citizens. Now, it could be that these people just plain old are not qualified. All right, thank you. You've answered my question. Anything else? Do you have anything else, Mr. Schwab? Your Honor, I think that's it. Thank you. All right, thank you. Rebuttal, Mr. Yanna? Oh, yes. I am saying that there are only 28 people, I think, that are listed in my brief, those who have, you know, mistaken the outcome of this case, because they were all born in this NMI after January 9, 1978. There are about 300 people involved here, so with respect to that number. And also, I'd like to disagree with Mr. Schwab that these people are trying to get in when they are already in. They were born here in this NMI, and even if we follow the Walter Marx, you know, decision on citizenship by virtue of the common law, these people would be at least citizens of the United States. But I'd like to point out that Mr. Schwab is really wrong in terms of saying that a term, one of the several states, refers only to being a state for purposes of state action. I stated in my reply brief, for instance, and I'd like to repeat that, re-read that one. Since the defendant is not shown in his legislative history to support that suggestion, we respectfully remind that it is the product of his wild imagination. But a clear review of the constitutional provisions which are made applicable within this NMI, and that's not only the important matter, and in which the NMI must be treated as if it were one of the several states, shows that there are foreign provisions that have nothing to do with civil rights. Take, for instance, the following constitutional provisions made applicable within this NMI, Article 1, Section 8, Clause 3, to regulate commerce with foreign nations and among the several states. That's nothing to do with there being a civil right there. And then Article 1, Section 10, Clause 1, no state shall enter into a treaty, alliance. Again, that has nothing to do with civil rights. So all those states that Mr. Glove is saying really have no foundation in fact. I think we have to interpret the law, if it's not ambiguous, as what it means literally. And that is that in interpreting all the provisions that are made applicable within the NMI, including the citizenship clause, it has to be, the interpretation has to be, that the NMI is to be treated as if it were one of those several states, which means that the NMI, for that purpose, is in the United States. Thank you. Ms. Deanna? Yes? This is Judge Rawlinson. What's your response to Mr. Schwab's argument that your clients have a way already established under the covenant to obtain citizenship? There is no way at all. And that is even a problem here in the NMI now, because they are trying to deport these persons who were born here, because they don't have any status, unless they can prove that they are U.S. citizens pursuant to Section 501A of the covenant. Why is there no way for them to obtain citizenship under the covenant? Because there is no law that makes them citizens here in the NMI, and Mr. Schwab is saying that they would become trustee or citizen. That's ridiculous. There's no such law that would make them trustee or citizen. The only way out is to prove that they are U.S. citizens pursuant to the citizenship clause of the 14th Amendment. Anything else? I think that's all, Your Honor. Any questions? Thank you to both counsel for making yourselves available for the telephonic conference. The case just argued is submitted for decision. Your Honor, am I allowed to say something else, or am I not? Basically, we just have rebuttal from the appellant. So we understand your argument, and we will take this case under submission. All right, thank you. Thank you. Thank you. Bye-bye. Goodbye. The next case on calendar for argument is Moreland v. Camacho. Thank you, Randy. Good morning.
judges: Farris, Noonan, Rawlinson